IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:20-CR-81 (2) |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| JOSE ANTONIO GARCIA, JR., | : | |
| Defendant. | : | |

**MEMORANDUM OPINION AND DETENTION ORDER**

This case is before the Court on the Government's Motion to Appeal Defendant's Bond (Doc. 23). On August 11, 2020, Magistrate Judge Karen L. Litkovitz held a detention hearing as to Defendant Jose Antonio Garcia, Jr., via video/teleconferencing. At that hearing, with Defendant present with retained counsel, Magistrate Judge Litkovitz heard arguments, accepted Defendant's exhibits for the Court's consideration under seal, and granted Defendant a no-amount own recognizance bond with electronic monitoring conditions. Magistrate Judge Litkovitz then granted the Government's motion to hold the bond in abeyance pending an appeal of her order setting bond to the undersigned District Court Judge.

The Government filed its appeal on August 14, 2020. Defendant filed a memorandum in opposition on August 17, 2020. On August 19, 2020, the Court held an in-person hearing on the matter, at which the parties presented oral argument and

Defendant submitted copies of the exhibits previously filed under seal.

After due consideration of the parties' memoranda, exhibits, and the argument of counsel, the Court finds that no combination of conditions will reasonably assure Defendant's appearance in this matter and the safety of the community. Accordingly, the Court **VACATES** the order releasing Defendant on an own recognizance bond and hereby **ORDERS** that he be detained pending trial.

I.  **LEGAL STANDARD**

Under the Bail Reform Act, 18 U.S.C. § 3142, upheld by the Supreme Court in *United States v. Salerno*, 481 U.S. 739 (1987), a defendant may be detained pending trial only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). The default position of the law, therefore, is that a defendant should be released pending trial.

That default is modified, however, for certain, particularly dangerous defendants. Specifically, when a "judicial officer finds that there is probable cause to believe" that a defendant committed one of the crimes listed in section 3142(e)(3), there is a presumption in favor of detention: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3). A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). Thus, when the government presents an indictment

including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention.

"Section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir.2001); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir.1985)). A defendant satisfies his burden of production when he "com[es] forward with evidence that he does not pose a danger to the community or a risk of flight." *Mercedes*, 254 F.3d at 436. "Although a defendant's burden of production 'is not heavy,' he must introduce at least some evidence." *Stone*, 608 F.3d at 945 (quoting *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir.1991)).

When a defendant satisfies the burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Mercedes*, 254 F.3d at 436. "The presumption remains as a factor because it [. . .] reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 945 (citing cases). To rebut the presumption, therefore, a defendant should "present all the special features of his case" that take it outside "the congressional paradigm [.]" *Id.* (quoting *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985).

The Government's "ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community." *Stone*, 608 F.3d at 946. In determining whether the government has met that burden, the

3

Court must consider certain factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, ... a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

18 U.S.C. § 3142(g). "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004) (citing *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir.2003)).

When the Court reviews a magistrate judge's order regarding the detention of a defendant, it conducts a *de novo* review of the relevant factors under Section 3142. *See United States v. Yamini*, 91 F.Supp.2d 1125, 1130 (S.D. Ohio 2000).

## II. ANALYSIS

Here, it is significant that the Magistrate Judge entered her order before the filing of the Indictment, which charges Defendant with a crime listed in section 3142(e)(3).

4

(Doc. 19.) Consequently, unlike the Magistrate Judge's review, this Court's review begins with the rebuttable presumption "that no condition or combination of conditions will reasonably assure" Defendant's appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3).

In rebuttal, Defendant notes that he is an American citizen with an established work history. He has paid taxes on his income—at the hearing, his counsel noted how unusual it is to have tax returns for criminal defendant. He financially supports his mother and siblings but has not been working recently due to the COVID pandemic. Defendant "has no desire to return to Mexico because he believes he will not be able to find the same employment opportunities there that he has found in the United States and he has established genuine friendships with people he has met from work and from the gym." (Doc. 24 at PageID# 127.) Moreover, besides providing financial support, he also provides emotional support to his family. All of these facts weigh against the likelihood that Defendant would flee.

Defendant further notes that he will be equipped with an electronic monitoring system to guarantee that he stays within the geographic restrictions set by Pretrial Services. His passport is in his counsel's possession, ready to be surrendered at the Court's direction. Pretrial Services recommended that Defendant abide by several conditions if released, including reporting to Pretrial Services on scheduled dates and times, actively seeking and maintaining employment, surrendering all passports, travel restrictions, and submitting to random drug testing.

Defendant has met his burden of production. It is therefore the Government's

burden to show that, notwithstanding Defendant's assertions, he still presents a flight risk or danger to the community. To that end, the Government has come forward with substantial information regarding each of the Section 1342(g) factors.

**Nature and Circumstances of Offense Charged:** Defendant was charged, along with a co-defendant, with Conspiracy to Possess with Intent to Distribute a Schedule II Controlled Substance (fentanyl) in violation of Title 21 United States Code Section 846, in addition to Bulk Cash Smuggling, in violation of Title 31 United States Code Section 5332. The penalties for the alleged drug offense include a mandatory minimum sentence of 10 years and up to life imprisonment. Fentanyl is one of the deadliest narcotics sold by drug dealers. Merely 2 milligrams is a lethal dose in most people. *See* United States Drug Enforcement Administration, Media Galleries, Fentanyl, (available at *https://www.dea.gov/galleries/drug-images/fentanyl*) (last visited 8/21/20). In this case, agents recovered a package weighing over 1,000 grams, which field tested positive for fentanyl. Doing the math, 1,000 grams of fentanyl contains 500,000 lethal doses—more than enough to kill the entire population of Cincinnati. (*See* United States Census Bureau, QuickFacts, Cincinnati city, Ohio (estimated population of 303,940 as of July 1, 2019) (available at *https://www.census.gov/quickfacts/cincinnaticityohio*) (last visited 8/21/20). In addition, the National Institute on Drug Abuse has observed that "[s]ome drug dealers are mixing fentanyl with other drugs, such as heroin, cocaine, methamphetamine, and MDMA. . . . This is especially risky when people taking drugs don't realize they might contain fentanyl as a cheap but dangerous additive," making overdose more likely. *See* National Institutes of Health, Fentanyl DrugFacts (available

at https://www.drugabuse.gov/publications/drugfacts/fentanyl) (last visited 8/21/20).[1]

With respect to the bulk cash smuggling charge, Defendant was stopped driving an automobile that contained a hidden trap compartment in its trunk. In that compartment, officers found $120,000 in bulk U.S. currency. In a post Miranda interview, Defendant advised officers there was approximately $200,000-$300,000 inside a residence located in the Southern District of Ohio that was to be transported as well. Upon execution of a search warrant for that residence, agents located three firearms, multiple bundles of bulk U.S. currency packaged in food storage bags, packaging materials containing drug residue, a digital measuring scale, and multiple bags of marijuana. Taken together, the evidence relating to Defendant's drug conspiracy and cash smuggling charges suggest his involvement in a large and productive illegal drug operation.

**Weight of the Evidence:** The above facts also support a finding that the evidence in this case weighs heavily against Defendant. (The Court acknowledges that the weight of the evidence shall not be construed to modify or limit the presumption of innocence. *See* 18 U.S.C. § 3142(j).)

**History and Characteristics of the Person:** The Government does not attempt to undermine Defendant's assertion that he has genuine financial and emotional ties to his family in California. It does question, however, the suggestion that Defendant has met his obligations to the Internal Revenue Service. At the hearing, the Government's

---

[1] The Court takes judicial notice of the facts from these publicly available government websites because they are not subject to reasonable dispute and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2).

counsel noted discrepancies between Defendant's tax returns and his representations to Pretrial Services. Namely, Defendant did not tell Pretrial Services that he had any children or dependents, yet he claimed a child tax credit on his tax return for a dependent nephew. Defendant also claims to have worked in construction and has submitted pay records for companies such as Amazon, International Tree Management, and an electrical wiring manufacturer. Yet, after his arrest for bulk cash smuggling, Defendant admitted to officers that he was paid $8,000 for each money drop he completes.

The Government also asserts that Defendant was not truthful with Pretrial Services regarding the number of times that he has traveled between the United States and Mexico. Defendant reported that he had traveled to Mexico twice, once in 2018 and once in 2019, to visit his girlfriend. However, United States Customs and Border Protection informed the Government that Defendant's passport has been used to travel between the United States and Mexico nineteen times, including four times in 2019.

Defendant lived in Mexico for four to five years with his grandparents. His counsel explained that Defendant moved to Mexico to be with his father, who had been deported, but later decided to return to the United States. Pretrial Services identified Defendant's Mexican ties, through his family, girlfriend and prior residency, as posing a risk of non-appearance, along with his possession of a passport, substance abuse history and conflicting residential address information. Defendant's counsel argues that consideration of Defendant's foreign ties is "highly prejudicial and unwarranted." However, this argument is premised on the incorrect assumption that the Government

8

inferred foreign ties from Defendant's ethnicity. (*See* Doc. 24 at PageID# 126.) The Government did not do so. Defendant has multiple, strong ties to Mexico, a foreign country, regardless of his ethnicity. Defendant's counsel also explained that Defendant has two different addresses because his mother recently moved into a larger house. Despite his counsel's objections and explanations, Defendant's travel to Mexico and familiarity with that country are properly considered as posing a risk of non-appearance.

**Danger to any Person or the Community:** For this factor, the Government points back to the seriousness of the offenses with which Defendant is charged. The Court agrees that the apparent scale of the alleged operation and the nature of the substance allegedly being trafficked pose a serious danger to the community. The Court further notes that, when asked why Defendant was in Ohio, his counsel offered no explanation. The Government opined, not surprisingly, that Defendant was in Ohio to further the ends of a nationwide drug conspiracy.

Based on the above factors and giving due consideration to the presumption that he should be detained; the Court finds, by a preponderance of the evidence, that that no conditions of release can assure Defendant will appear and, by clear and convincing evidence, that no such conditions can assure the safety of the community. Defendant therefore must be detained pending trial in this matter.

### III. CONCLUSION

For the above reasons, the Court **VACATES** the Magistrate Judge's order releasing Defendant on an own recognizance bond and **ORDERS** that Defendant be

9

detained pending trial.

## Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for a court appearance.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND